## THE STATE v. ELLIS WEBB.

1. PERJURY.—An indictment for perjury, as that offense is defined by art. 1909, Pas. Dig., is fatally defective if it fails to charge the defendant with having deliberately and willfully sworn falsely.
2. PERJURY.—If any constitutive element of the offense as defined by the Code be omitted in the indictment, the omission is fatal.

3. PERJURY.—A charge in the indictment that the defendant "will-
fully, unlawfully, knowingly, corruptly, and feloniously did commit
willful and corrupt perjury," and that he did "willfully, knowingly,
corruptly, and falsely state under oath," &c., and that he "did
then and there, on the trial of said case, unlawfully, willfully,
knowingly, and feloniously commit willful and corrupt perjury,"
does not meet the requirements of the Code, nor avoid the necessity
for charging that the false statement was "deliberately and willfully
made" under the sanction of an oath.

4. PERJURY.—An indictment for perjury which charges the false state-
ment under oath to have been made on the trial of a party charged
with a criminal offense, is bad, if it fails to state that an indictment
had been found against such party, or that the case on the trial of
which the false statement was made was one over which the court
trying it had jurisdiction.

5. NEW TRIAL.—The reluctance of district judges to act in opposition
to juries, when verdicts of guilty are rendered upon insufficient evi-
dence, again noticed.

APPEAL from Matagorda.    Tried below before the Hon.
William Burkhart.

The indictment charged that "Ellis Webb, * * * in the
county of Matagorda, did willfully, unlawfully, knowingly,
corruptly, and feloniously commit willful and corrupt per-
jury, and that then and there the case of the State of Texas
against Leander Hunt, charged with disturbing religious
worship at Caney church, came on to be tried in the Dis-
trict Court of Matagorda county, and upon the trial of said
cause it became and was a material issue whether or not
the said Leander Hunt spoke in a low tone of voice loud
enough to be heard by the congregation, and that the said
Ellis Webb, having then and there been duly and legally
sworn by the district clerk of Matagorda county to give
evidence in said case, (said clerk being then and there the
officer authorized under the law to administer oaths,) did
then and there willfully, knowingly, corruptly, and falsely
state under oath that on the occasion referred to in the
indictment he was present at Caney church, and distinctly
heard the said Leander Hunt say in an audible tone of
voice, "God damn you, give me that cup," when in fact

and truth the said Leander Hunt did not say in an audible tone of voice, " God damn you, give me that cup." Whereupon the grand jurors aforesaid present that the said statement was false, and that the said Ellis Webb then and there knew it to be false, and that the said Ellis Webb did then and there (upon the trial of said case) unlawfully, willfully, knowingly, and feloniously commit willful and corrupt perjury, contrary," &c. Trial and verdict of guilty. Motion in arrest of judgment sustained, and State appealed.

*George Clark, Attorney General,* for the State.

*Quinan,* for appellee, contended that the indictment was bad, because the alleged false statement was not charged to have been deliberately and willfully made, citing Pas. Dig., art. 1909; Juaraqui *v.* The State, 28 Tex. 625; State *v.* Powell, 28 Tex., 627; 2 Bishop's Crim. Law, 997.

DEVINE, ASSOCIATE JUSTICE.—The appellee was indicted in the District Court of Matagorda county at the June Term, 1873, charged with having, on the 10th of October, 1872, committed "willful and corrupt perjury" in "the case of the State of Texas *v.* Leander Hunt, charged with disturbing religious worship at Caney church," and that the said Ellis Webb, being then and there duly sworn, &c., * * * did then and there willfully, knowingly, corruptly, and falsely state under oath * * * that he was present at Caney church, and distinctly heard the said Leander Hunt say in an audible tone of voice, " God damn you, give me the cup."

There was a trial at the February Term, 1874, a verdict of guilty as charged in the indictment, a motion for a new trial, which was overruled, and a motion in arrest of judgment made by defendant. The court sustained the motion in arrest of judgment and dismissed the case. The District Attorney appealed, and has brought the cause for revision to this court.

In sustaining the motion to quash the indictment the court did not err. The indictment, when compared with the statute, is found wanting in a material charge set forth in the Criminal Code in its definition of perjury, which is declared to be " a false statement, either written or verbal, deliberately and willfully made," &c., &c. (Paschal's Dig., art. 1909.) The indictment omitted to charge the defendant with having deliberately and willfully sworn falsely. It is true, the District Attorney in framing the indictment uses an abundance of expletives, such as "willfully, unlawfully, knowingly, corruptly, and feloniously did commit willful and corrupt perjury," and that the accused did "willfully, knowingly, corruptly, and falsely state under oath," and that the accused "did then and there, upon the trial of said case, unlawfully, willfully, knowingly, and feloniously commit willful and corrupt perjury." But in all the charges quoted the short and simple statement required by the Code is omitted. There is no charge that the false statement was *"deliberately and willfully made."* We are left to inference in ascertaining from the indictment that the accused is charged with the crime of perjury as defined in the Code. If the definition, and material facts comprised in the definition as set forth in the statute, be omitted in any one material circumstance, the jurisdiction will be bad. (1 Arch. Crim. Prac. and Plead., 282, and, American notes.) " An indictment which describes the offense as having been done feloniously, unlawfully, and maliciously will not be good where the statute uses the words *willfully* and maliciously." (State *v.* Delue, 1 Wis., 166.)

In the case of the State *v.* Juaraqui, 28 Tex., 626, this court declared that "the indictment ought to charge that the defendant deliberately and willfully swore falsely," and that the words falsely, wickedly, willfully, and corruptly, being matters of deduction from previous averments, cannot supply the want of averments essential to the proper and legal description of the offense, and reversed the judg-

ment of conviction. In the case of the State v. Powell, 28 Tex., 627, the omission in the indictment to charge the defendant with having deliberately and willfully made the false statement, was held to be sufficient to sustain a motion in arrest of judgment.

The indictment before us is likewise defective in this, that it fails to state that any indictment had been found against the parties on trial for disturbing the worshippers in "Caney church," or that the court had cognizance of the offense by reason of its being committed within the limits of Matagorda county, or that it was one over which the court had jurisdiction. This the indictment should have stated, and this it failed to do.

In the case of State of North Carolina v. Gallimore, 2 Ired., 374, 375, the indictment, charging the accused with perjury under a statute similar to ours, set forth with minuteness, and at considerable length, the style of the count, the names of the presiding judges, their authority to administer the oath, the character of the offense charged, and the taking of the oath, and its exact language, and the falsity and materiality of the words uttered. The court, in reviewing the case, declared: "The objection to the indictment is, that it does not distinctly and certainly set forth the facts, which show that the alleged false oath was taken in a judicial proceeding, before a court having jurisdiction thereof. It is a general rule that every indictment should charge explicitly all the facts and circumstances which constitute the crime, so that on the face of the indictment the court can with certainty see that the indictors have proceeded upon sufficient premises." According to this rule, the court said that the indictment charging perjury should have averred, as a fact, the finding an indictment in the County Court against the defendant in the former case, and should have set forth that indictment, or so much thereof as to show that it charged an offense committed within that county, and of which said court had

cognizance; and should also have set forth the plea of the defendant in that cause, the court stating that it would then have appeared upon the face of the indictment whether the alleged false oath was taken in a judicial proceeding before a court having jurisdiction thereof. The diversions in the indictment in the case just cited are the same as are presented in this, and the remarks of the court in that case apply with equal force to the present one. In the case of Steinston v. The State of Tennessee, 6 Yerg., 531, the court reversed the judgment on a conviction of perjury by reason of the omission in the indictment to charge that the prosecution was by indictment on presentment, was defective, and could not warrant a conviction, and that the statement of an issue between the State and defendant, tried in the County Court, for an assault and battery, was not such a charge of the court having jurisdiction of the offense as would support the accusation. The rule is uniform, that intendment will not be called in to aid an indictment on a prosecution for perjury.

The defects in the indictment authorized the court to sustain the motion in arrest of judgment, and this opinion, ordinarily, should close with an affirmance of the judgment. This cause, however, presents some features, clearly shown in the statement of facts and motion for a new trial, which authorize, if they do not demand, an expression of opinion from the court on the features thus presented.

The defendant, Ellis Webb, was indicted for having committed perjury on the trial of Leander Hunt for disturbing religious worship in Caney church. The false swearing or perjury was charged to have been committed by defendant swearing falsely that he distinctly heard Leander Hunt say, in an audible tone of voice, " God damn you, give me the cup." Hunt and two others had been indicted two years before the present trial for the disturbance, and were fined in the sum of ten dollars. These three were the principal witnesses for the prosecution on the trial of the defendant,

Webb. Hunt, the principal actor in the former disturb-
ance at the church, testified to the words charged as being
sworn to by defendant when he, witness, was on trial, but
that he, witness, never said so, or anything like it; is very
positive about it; he and Glatz and Bryant were prose-
cuted for making disturbance in the church; that he had
*taken a drink or two in the church,* but was perfectly at him-
self, and knew what occurred. Bryant testified that he
was present, sitting right by Leander Hunt, and did not
hear him say —— ——, (the words charged as perjury ;)
could have heard Hunt had he said so; he (Hunt) got the
cup from Glatz; heard Hunt ask for something to drink,
" but he did not say give me the cup;" heard him damn,
but not above a whisper. " Witness was sitting close by
Hunt; saw him drinking; he got the bottle from me."
Glatz testified that he was in Caney church; was positive
Hunt did not say " God damn it, give me the cup;" he
could not have said so and witness not have heard him.
Hunt did drink—got the cup from me—right by his knee;
was surprised to see him (Hunt) drink out of it, as it had
been used for a "spittoon." Seaborn, a witness for the
State, knew but little; his evidence was that he did not
hear Hunt use the language attributed to him; he and de-
fendant, Webb, testify in court as charged. Showee, for
the State, testified he did not hear Hunt use the words
sworn to by defendant. Bownell, for the State, did not
hear Hunt use the words; was nearer Hunt than Webb
was. Bertrand was present in church; heard no disturb-
ance, but saw some ladies moving their seats. Daly, for
the accused, testified that he was present on the occasion
referred to; that Hunt did make a disturbance in the
church; that he was "drinking and carrying on there;"
that Hunt said to Bryant, "give it to me," meaning the
bottle; that witness told him to hush, and Hunt cursed
him, and said to witness, "if you don't hush I will punch
you on the head;" heard Hunt say "give it to me," and

damning. Currie testified that he was present; heard Hunt say "give it to me;" don't recollect whether he said "damn it, give me the cup," or "give me the bottle," or "give it to me," but heard him damning and cursing and asking for something, and repeatedly heard him, several times, asking for something and damning, saying, "they will be up off their knees and see me;" was sitting near Hunt, one man between us. Hunt was tolerably drunk, was testified by another witness.

This is all the material evidence in the case. The judge, in his charge to the jury, informed them that, "if you believe from the evidence that the defendant did testify, as charged, and that the acts of disturbance testified to by him were in connection with other matters that disturbed said congregation, then you are to regard the matter as testified to as material, it matters not how many acts of disturbance there may have been."

This portion of the charge failed to present the law applicable to the case. It, in effect, told the jury that, provided the matters testified by the accused had any connection with the acts of disturbance charged against Hunt, then it was their duty to consider the evidence as material, no matter how trivial and immaterial such evidence might be, in its very nature, essence, and universal acceptation.

Taking this portion of the charge in connection with the refusal of the presiding judge to give the instruction asked by defendant's counsel, "that the false statement must be proven to have been upon a matter material to the issue," and it will be readily perceived, by an examination of the evidence, that the charge worked great injury to the accused, and the refusal to give the instruction asked by the defendant was error.

The overruling defendant's motion for a new trial, when the evidence and the charge of the court are considered in connection with the affidavits filed, is another instance of

the unwillingness to grant new trials in clear cases of a wrong finding by the jury.

The evidence as recited shows that the three convicted disturbers of religious worship were the principal witnesses for the State.

The evidence of the principal in this disturbance (Hunt) admitted that he had taken a drink or two in the church, but knew what occurred. His two associates say they did not hear him swear, but admit that he obtained the bottle from one, and the vessel or cup, used as a spittoon, from another; and that he drank from it while the congregation were in the act of prayer. One of these associates admits that Hunt asked him for something to drink, and heard him damn, but not above a whisper. Other witnesses testified to the disturbance; the ladies leaving their seats; the cursing and swearing by Hunt; the fact that he was tolerably drunk; that he cursed and threatened to assault and beat a witness in the church, who requested him to hush. It was shown that Hunt did make a disturbance in the church; that he was drinking and cursing, and carrying on there. Under all the aspects of the case, it was the duty of the District Judge to have granted a new trial, and particularly so when his attention was specially called to the character of the principal witness for the State, and other facts which were embraced in the affidavits of ten respectable citizens of Matagorda county. We do not intend to be understood as saying that the affidavits attached to a motion for a new trial, which impeach the character of the witnesses, should be compulsory in their character on the mind of the judge in granting a new trial; but the affidavits in the present case were of that character that should have required a careful consideration of the whole cause, the result of which should have been the granting a new trial to the accused.

While the enforcement of the criminal law is absolutely demanded for the protection of private and public rights,

the protection of the citizen from the effects of law illegally administered is equally demanded by every sentiment of justice and principle of law. The refusal of a district judge to grant a new trial or a conviction of felony is not fully corrected by a reversal in this court. Such reversal cannot reverse the confinement for months in a loathsome county jail of a man guiltless of any violation of law. Neither can it compensate for the loss sustained or sufferings endured during such confinement. Our immediate predecessors called the attention of the district judges to this spirit of unwillingness to aid in opposition to the finding of the jury in criminal cases, and suggested the necessity of a different course on the part of the district judges. We feel it is necessary to repeat their admonition.

The judgment is affirmed.

AFFIRMED.