[No. 1459.]

## L. GABRIELSKY v. THE STATE.

1. PERJURY—INDICTMENT.—If the alleged false statement is in writing, it is not necessary that an indictment for perjury should set up the alleged false statement in *hæc verba*. It will suffice if it is set up substantially.

2. SAME.—Nor is it necessary that the indictment set up the whole of what was sworn. Only that portion alleged to be false need be recited.

3. SAME—CASE STATED.—As alleged in an indictment for perjury, the alleged false statements consisted of several distinct and independent items, not so connected as to make the falsity of one the falsity of all, and the only assignment of perjury connected therewith was that the same were willfully and deliberately made by the accused, that the same were false, and that the accused well knew them to be false when he made them. *Held*, that such a general averment that the several alleged false statements as set out in the indictment are each and all false, without negativing them in detail, and without setting out the truth in regard to each, is not sufficient to charge the offense of perjury.

4. SAME—CASE APPROVED.—*Lindenburg* v. *The State*, 13 Texas, 27, explained and approved.

5. SAME.—An indictment for perjury, to be sufficient, must negative specifically the truth of the alleged false statement, and especially must it so negative such truth when, as in this case, the false matter consists of several distinct and separate propositions.

6. SAME—"COMMON SENSE INDICTMENT BILL."—Form No. 13 of the Acts of the Seventeenth Legislature, page 62, known as the "Common Sense Indictment Bill," prescribing the requisites of an indictment for perjury, is unconstitutional.

7. PERJURY—PRACTICE—EVIDENCE.—It is a statutory provision that "no person shall be convicted of perjury except upon the testimony of two credible witnesses, or of one witness strongly corroborated by other evidence as to the falsity of the defendant's statement under oath, or upon his own confession in open court."

8. SAME—CORROBORATIVE EVIDENCE.—The term "corroborated strongly by other evidence," used in the statute as qualifying the evidence necessary to support a conviction for perjury, means that this other evidence shall come from another source than from the witness who is to be corroborated. The witness to be corroborated cannot corroborate himself by his own acts and declarations. See the opinion *in extenso* for evidence *held* insufficient to corroborate the evidence of a testifying witness.

SAME—EVIDENCE.—The record of a civil suit instituted by the prosecuting witness against the defendant was properly admitted in evidence for the purpose of showing a judicial proceeding in which the alleged false statements, under oath, were made by the defendant; but it was incompetent as corroborative evidence of the falsity of the defendant's statement.

10. PRACTICE—EVIDENCE—CHARGE OF THE COURT.—Article 745 of the Code of Criminal Procedure requires that "in all cases where by law two witnesses, or one with corroborating circumstances, are required to authorize a conviction, if the requirements be not fulfilled, the court shall instruct the jury to render a verdict of acquittal, and they are bound by the instruction." See the opinion *in extenso* for a special charge embodying the requirements of the rule, which, under the circumstances of this case, is *held* to have been erroneously refused by the court.

11. SAME—PRACTICE IN THIS COURT.—The rule laid down in Article 745, *supra*, is an exception to the general rule that the jury are the exclusive judges of the credibility of the witnesses and the weight of the evidence, and it requires the court, in such cases, to pass first upon the competency and sufficiency of the evidence, and then to instruct the jury to acquit when the requirements of the law as to the *quantum* of the evidence have not been fulfilled; and this responsibility of the court cannot be shifted to the jury. If the trial court errs as to the sufficiency of the evidence, then the same question is presented to this court, and, in considering it, this court is not bound by the verdict of the jury, because the question is one primarily for the court, and not for the jury, to determine.

12. PRACTICE—CIRCUMSTANTIAL EVIDENCE—CASE STATED.—A well settled rule of evidence is that the best evidence attainable must be adduced, and that where it is disclosed that direct evidence of a material fact is probably in existence, circumstantial evidence of that fact cannot be resorted to without accounting for the absence of the direct evidence. The testimony in this case discloses that two other parties were present at a conversation between the prosecuting witness and the defendant with reference to the transaction which forms the basis of this prosecution for perjury, and yet neither of these third parties were produced, nor their absence accounted for. *Held*, that under such circumstances, circumstantial evidence was not admissible.

13. SAME—CHARGE OF THE COURT.—See the opinion *in extenso* for a special charge requested, which, as it was applicable to and demanded by the evidence adduced, was erroneously refused.

14. SAME—EVIDENCE.—See evidence *held* insufficient to support a conviction for perjury.

APPEAL from the Criminal District Court of Galveston. Tried below before the Hon. G. Cook.

The appellant was indicted in the Criminal District Court of Galveston County upon the charge of perjury, which he was alleged to have committed in this, viz: That on the twenty-fourth of January, 1881, in the county of Rusk, he had sworn to a certain plea which was thereafter alleged to have been used by his direction in the District Court of Galveston County, in cause No. 10,382, *Focke & Wilkins* v. *L. Gabrielsky*, on the docket of said court. At the December term, 1882, of said criminal

court, the cause was called for trial.   The defendant moved the court to quash the indictment, and the court having overruled the motion, the defendant pleaded "not guilty," and proceeded to trial on the merits.   The jury rendered a verdict of guilty and assessed the punishment at five years confinement in the penitentiary.   The defendant's motion for new trial was overruled, and he prosecutes this appeal.

The State introduced in evidence, first, the original petition in the suit of *Focke & Wilkins* v. *L. Gabrielsky*, instituted in the District Court of Galveston County, on three different promissory notes of five thousand dollars each; second, the three different promissory notes upon which the said suit was instituted; and, third, the witness T. H. Still, who testified that he was the person whose name was signed to the notarial certificate at the conclusion of a certain legal document exhibited, and which was signed with the name of the defendant.   The witness made that certificate on the said document as a notary public in and for Rusk county, Texas, duly qualified and acting at the time.   The defendant signed the document in question, in the presence of the witness, and swore to the truth of its contents.

The State next read the legal document referred to by the last witness, which was the defendant's original answer to the suit of Focke & Wilkins, and which was the instrument on which the indictment in this case was based.   It reads as follows:

"Focke & Wilkins ) ss.
"No. 10,382.    v.    } In District Court, Galveston
    "L. Gabrielsky. )    County.

"Now comes the defendant, L. Gabrielsky, and says that, before and at the time of the commencement of this suit, he, the said defendant, resided in the county of Rusk, State of Texas, and had his domicil therein.

"That the three (3) certain promissory notes, each for five thousand dollars, bearing date July 19, 1880, signed by this defendant, payable on their faces respectively to the order of Focke & Wilkins, plaintiffs herein, at their office in Galveston, on which this suit is brought, are each and all of them accommodation notes, executed and delivered by this defendant, L. Gabrielsky, to the plaintiffs Focke & Wilkins, at the special instance and request of said plaintiffs, for their, the said plaintiffs', accommodation, and the said plaintiffs were to use them for their, the said Focke & Wilkins's, own benefit, and they, the

said Focke & Wilkins, were to provide for the payment of the said three not s at their respective maturity, and this defendant was not to be looked to by plaintiffs for the payment of said notes, or any of them, on their maturity.

"That the said notes were given by this defendant to plaintiffs with the express understanding, and for the express object and purpose of enabling plaintiffs, for their, the said plaintiffs', convenience and accommodation, to raise money on said notes, and as a loan of name and credit by this defendant to plaintiffs from the date of said notes to their maturity, respectively. That, as between this defendant and the plaintiffs, said three notes were not executed as the evidence of any indebtedness then existing, or thereafter to be incurred by this defendant to plaintiffs, but for the accommodation of plaintiffs as aforesaid.

"This defendant, L. Gabrielsky, further says that he is not now, and was not then, on July 19, 1880, a partner with Adolph Friedlander, as alleged by plaintiffs. This defendant says that the aforesaid three promissory notes sued on herein by plaintiffs were not executed by Adolph Friedlander, as alleged in plaintiffs' petition, nor by any one for him authorized by him, but the same were executed as aforesaid by this defendant individually. Wherefore and whereupon this defendant prays judgment whether this court will take further cognizance of this suit; for general relief in the premises.

"L. Gabrielsky, the above named defendant, having been duly sworn, on oath says that the foregoing pleas and allegations are true in substance and in fact. Interlineations made before signing, and before oath.

    (Signed)                                    "L. GABRIELSKY."

"Sworn to and subscribed before me, this the twenty-sixth day of January, 1881.

                          "T. H. STILL, Notary Public,
    [Seal.]                        "Rusk County, Texas.
                    " MANN & BAKER,
                          "Att'ys for L. Gabrielsky."


The State then proved the use of these various documents in the suit of *Focke & Wilkins* v. *L. Gabrielsky.*

Henry Wilkins was then introduced by the State, and testified that in 1880, when the notes in evidence were executed by the defendant, he, the witness, was a member of the firm of Focke & Wilkins, cotton factors and commission merchants,

Galveston, Texas. He was at present a member of the firm of Focke, Wilkins & Lange. The body of each of the three notes in evidence was written by the witness in the office of Focke & Wilkins, in Galveston, on the nineteenth day of July, 1880. The firm of L. Gabrielsky, of which the defendant was a member, had been dealing with Focke & Wilkins, and owed them about sixteen thousand dollars, and the three five thousand dollar notes were given as an evidence of indebtedness. They are the same notes which were sued on by Focke & Wilkins in cause No. 10,382, in the District Court of Galveston.

The cross-examination of this witness embodies the evidence in detail upon which the conviction was founded, and is here given at length:

"The firm of Focke & Wilkins began business with the firm of L. Gabrielsky some time in 1877. Gabrielsky did business in Henderson, Overton, and at one time in Troupe. A. Friedlander was his partner. They both told me so. Friedlander's name did not appear in the style of the firm, from the fact, I presume, that he failed once, and his old affairs were unsettled. He and Gabrielsky, however, assured me long before July 19, 1880, that the matter would be settled, and could be settled for five hundred dollars nett. We believed their statement, as indeed we accepted as true all their representations. We found, during our connection with them, that we could rely on them; at least we thought so; and, while we made but few inquiries about them, we placed implicit confidence in their veracity. This refers to the time prior to their failure in December, 1880.

"A few days before the nineteenth of July, 1880, my partner, John Focke, was in Overton, and while there Gabrielsky, who then owed us between fifteen and sixteen thousand dollars, asked for an advance or loan of three thousand dollars. Focke referred him to me. On July 19, 1880, Gabrielsky came to Galveston on business, I presume, or perhaps to get the loan mentioned. At all events he called on us and asked for it. Meanwhile Focke had returned, and we had agreed that as Gabrielsky owed us so much already we would have to let him have the three thousand dollars, which he wanted to use in New York for the purchase of goods for cash, or to pay old debts. Accordingly, when Gabrielsky applied for the loan I consented to let him have the money. I drew up three notes for one thousand dollars each, payable at Overton, and maturing respectively on October 1, November 1, and December 1, 1880. We exacted the

assurance, and Gabrielsky promised, that these notes would be promptly met at maturity, and it was in deference to his wishes that they were made payable at Overton.

"The loan was extraordinary in its relation to our dealings with Gabrielsky, and it was understood that we were to have no trouble about the notes being promptly met. After he had signed the notes, Focke suggested that Gabrielsky might get along with less money, and Gabrielsky consented to take only twenty-five hundred dollars. We therefore gave him New York exchange for twenty-five hundred dollars, and credited the last note with five hundred dollars. When this transaction was consummated, I asked Gabrielsky to sign the notes which are in evidence. The three five thousand dollar notes, which bear the same date, are made payable the same dates, and stipulate no interest. We had never closed Gabrielsky's account from the beginning of our business relations with him, but every six months, beginning January 1, we sent a statement of our account to him. On the second of July previous to the nineteenth referred to, we had sent him a semi-annual statement, which showed a balance as per statement rendered January 1, 1880, and itemized all items of charges and credits from said January 1, 1880, to said July 2, 1880. The statement was a transcript from his account in our ledger. We had received no acknowledgment by mail of the statement, and when I asked Gabrielsky if he and Friedlander had examined it, my recollection is that he said 'no,' that they had been too busy.

"In view of this failure to acknowledge said statement, I demanded that Gabrielsky should sign the said three five thousand dollar notes. This he declined to do without first seeing Friedlander, and there seemed to be a reluctance on his part to sign them. I urged that he owed us nearly sixteen thousand dollars, which was too much money to be standing on open account without any written evidence of the obligation, and reminded him that the statement of July 2 had not been acknowledged. Gabrielsky stated that he had no authority from Friedlander to sign the notes, and added that we ought to know from what we knew of his business that he would not be able to pay the notes as they were made payable. I responded by saying that we did not expect him to be able to reduce his account so as to meet the notes at maturity, but we expected the first note to be at least partly met by the first of October; that he should not hesitate to trust us, as we had trusted him for eighteen thousand dollars;

2 B

that we had taken his two notes for twenty-five hundred dollars each in 1878, and had never asked him to pay them, although we had pressed him to reduce his account."

In answer to a direct question whether he had said anything about his convenience or accommodation in getting the notes, the witness said: "Yes; I told Gabrielsky that if money became tight with us, as it frequently did, we would need his notes for use in bank, and that they would be a convenience to us, which we could not enjoy in an open account. I used that as an argument to induce him to sign the notes. I do not know why he seemed reluctant to sign the notes, except that he stated that he could not sign them without previously conferring with Friedlander. It may be that he could not read the notes, but I think he knew what they were. He is an illiterate man, and is slow to comprehend business matters, so much so that we preferred to, and usually did, transact our business with his partner. He can sign his name, and I think he can read and write German; but I am pretty well satisfied that he can neither read nor write English. He understands English, however, sufficiently for all business purposes. At my suggestion Gabrielsky took the notes with him and in a few days they came back by mail signed as you see, "L. Gabrielsky, A. F." They were signed in Friedlander's writing. We did not give Gabrielsky credit on his account for the notes, neither did we credit the three thousand dollars. The advance of twenty-five hundred dollars was an extraordinary transaction, and was out of our usual dealings with Gabrielsky, and was entered in our Bills Receivable account.

"No entry of any kind was made on our books concerning the three five thousand dollar notes. They did not extinguish the open account, or any part of it. The account bore interest on debits and credits the same before as after the execution of the notes. The notes stipulated no interest. They were never presented for payment, nor any demand made for payment of them, until suit was filed. The three notes for one thousand dollars each, or at least the first and second, were presented for payment, but neither were paid. We did not enter any credits on the notes for shipments after July 19, but entered up everything on the open account. In explanation of this, I would say that we do not credit notes to open accounts unless we quit business with a customer and settle his account by taking his note for the balance due. In fact, we keep no regular bills receivable

account. Our custom and purpose was to enter up credits on open accounts, and, when the amount was extinguished, to enter up a credit from the open account to the notes. We did not do this on the two twenty-five hundred dollar notes referred to as having been given in 1879, but we based no claim on them. They were not presented for payment, but when the first one of them became due we dunned Gabrielsky to reduce his account.

"We had not, on July 19, 1880, surrendered those twenty-five hundred dollar notes, and in fact have them yet. I suppose we forgot to surrender them, as we make no claim on them. Gabrielsky asked me to surrender them on July 19, 1880. I refused, telling him that I would see about it when he had given us the three five thousand dollar notes. He has never since demanded them. Messrs. Scott & Levi, his counsel, did, in writing, demand them some two months ago, also a statement of our business with Gabrielsky. I read the letter hastily, and handed it to Major McLemore, my attorney. I told Scott that McLemore would answer for me. I did not surrender the notes or give the statement asked. I don't know of any better reason for not complying with the request than that the condition of our relations and accounts with Gabrielsky had been passed on by a court of competent jurisdiction in said cause No. 10,382.

"In that case we sued on the three notes in evidence, and attached the property, valued at about twelve thousand dollars, which Gabrielsky had assigned to T. H. Still for the benefit of his creditors. We only sued on the three five thousand dollar notes. He owed us about eighteen thousand dollars in all when we brought suit. We have never closed his account. The balance he owes us will have to be charged to profit and loss. I don't know positively that Gabrielsky knew how we kept books, but I presume he did, from our past dealings. I told him that I wanted the three notes just as I had told him I wanted the two twenty-five hundred dollar notes in 1878, and I referred to our course with respect to them to show that we had no disposition or interest in accomplishing his ruin.

"Our dealings with Gabrielsky were very considerable. His account slowly but constantly increased from a small debt to about eighteen thousand dollars. During the three years of our relations he shipped us, on approximation, about eight thousand bales of cotton. There is a suit now pending in Rusk county between our firm and Still, the assignee of Gabrielsky, involv-

ing the twelve thousand dollars worth of property assigned by Gabrielsky. The suit grows out of our attachment in suit No. 10,382 in the District Court of Galveston county. Gabrielsky is, and is likely to remain, an important witness for Still in said case. His debts to accepting creditors would more than consume the property.

"When Gabrielsky was here on July 19, 1880, our ledger account against him was posted up so as to show the condition of it, but my recollection is that the exact amount due us was not ascertainable, because there was a little cotton either unsold or not accounted for. He owed us more than fifteen thousand dollars, however, exclusive of the twenty-five hundred dollars, and the account so showed. The advance of twenty-five hundred dollars was not given in consideration of the execution of the three five thousand dollar notes, nor *vice versa*, nor was there any consideration for them, save the existence of the open account. I am now in the wholesale grocery business, and in ordinary business generally accounts are closed by notes when such are given. Our custom was different, as already stated, inasmuch as we credited the notes with credits of running accounts, instead of crediting the accounts with notes given, except when we wished to discontinue the account.

"A man named Morris, who is our bookkeeper, and Mr. John Focke, my partner, were present at the interview, but Focke was not constantly in the room."

The motion for new trial assailed the evidence in various particulars, and raised generally the questions considered in the opinion.

*Scott & Levi* filed an exhaustive and able brief for the appellant, but too lengthy for insertion. Upon the sufficiency of the indictment they cited *State* v. *Lindenberg*, 13 Texas, 27; *Jauraqui* v. *State*, 28 Texas, 625; *State* v. *Powell*, 28 Texas, 626; *Alexander* v. *State*, 29 Texas, 497; *State* v. *Hanson*, 23 Texas, 233; *Bush* v. *Republic*, 1 Texas, 460; *State* v. *Carland*, 3 Dev. (N. C.) L., 114; *State* v. *Wood*, 17 Iowa, 18; *United States* v. *Morgan*, 1 Morr. (Iowa), 341; *Thomas* v. *Commonwealth*, 2 Rob., 795; 3 Whart. Crim. Law, sec. 2259; 2 Russ. on Cr. P., 643; *State* v. *Mumford*, 17 Am. Dec., 573; *State* v. *Lea*, 3 Ala., 602.

*O. S. Eaton*, for the State.

WILLSON, J. In an indictment for perjury, if the alleged false

statement is in writing, it is not required that it should be set out in the indictment *in hæc verba.* It is sufficient to set out the alleged false matter substantially. (2 Whart. Cr. Law, § 1298; *Taylor* v. *The State,* 48 Ala., 157; 2 Bish. Cr. Proc., § 915, and note 8; *People* v. *Warner,* 5 Wend., 271; *Campbell* v. *People,* 8 Wend., 636; 2 Whart. Prec., 577, note j; Acts 17 Leg., p. 60, sec. 6.)

Neither is it necessary to set out in the indictment the whole of what the defendant has sworn. Only that portion of the statement alleged to be false need be recited. (2 Whart. Cr. Law, § 1299; 2 Bish. Cr. Proc., § 916; *Campbell* v. *The People,* 8 Wend., 636; *State* v. *Neal,* 42 Mo., 119.)

It is strongly urged by defendant's counsel that the indictment in this case is insufficient because it fails to properly assign and point out the perjury complained of, with sufficient particularity; in other words, that the indictment contains no assignment of perjury. As set out substantially in the indictment, the alleged false matter consists of several distinct and independent items or propositions, some of which might be true while the others might be false. These several items or propositions are not so connected as to make the falsity of one the falsity of all. After setting out the alleged false statements, the allegation is that the same were willfully and deliberately made by Louis Gabrielsky, and the same were false, and that the said Louis Gabrielsky well knew the same to be false at the time he made the same. This is the only assignment of perjury contained in the indictment. It is simply a general averment that the several alleged false statements, as set out in the indictment, are each and all false, without negativing them in detail, and without stating the truth in regard to each. At common law, all the authorities hold this to be insufficient, and we have been unable to find a single precedent, either at common law or in our own State, where the assignment of perjury has been dispensed with. (2 Arch. Cr. Pr. and Pl., 1733; *State* v. *Bishop,* 1 Chipman (Ver.), 120; *Com.* v. *Cook,* 1 Robinson (Va.), 729; *State* v. *Lea,* 3 Ala., 602; *Gibson* v. *The State,* 44 Ala., 17; 2 Whart. Prec. of Indict., 577, *et seq.;* 2 Bishop's Cr. Proc., secs. 918–919; *Burns* v. *The People,* 59 Barb., 531; Whart. Cr. Law, sec. 1300, *et seq.*)

We are aware that the case of *The State* v. *Lindenberg,* 13 Texas, 27, is sometimes cited as holding a different doctrine, but we do not so understand that case. It will be observed, upon an examination of the indictment in that case, that it contained the assignment of perjury, expressly negativing the truth of the al-

leged false oath, and pointing out the particulars wherein the same was false. It is said by the court in that case: "Of the several causes assigned in support of the motion to quash, there is but one which seems to us at all deserving of notice; that is, that in the assignment of the perjury, instead of simply averring the negative of the oath, the indictment, in this connection, also avers the knowledge of the defendant of the matter specially averred as the converse of the oath. Thus, it is averred that it was a material fact upon the trial that the table was exhibited for gaming; that the defendant falsely swore that it was not so exhibited; and, instead of averring simply the negative of the oath, that in truth it was so exhibited, the averment is that the defendant well knew that the table was exhibited for gaming. Though it was not necessary, in connection with the special averment negativing the oath, to aver also the defendant's knowledge, which was elsewhere sufficiently charged, the averment in this connection did not impair the force or effect of the special averment of fact, in which it was introduced; and surely it did not vitiate the indictment." We think the Lindenberg case supports, instead of denies, the proposition that it is necessary to specifically negative the truth of the alleged false statement.

We have carefully examined all the perjury cases decided by our Supreme Court, and by this court, and in none of these cases do we find even an intimation that an indictment for this offense which omits the proper assignment of the perjury would be maintained as a good indictment. (*State* v. *Powell*, 28 Texas, 626; *Jauraqui* v. *The State*, Id., 625; *State* v. *Webb*, 41 Texas, 67; *Allen* v. *The State*, 42 Texas, 12; *State* v. *Perry*, Id., 238; *State* v. *Openheimer*, 41 Texas, 82; *State* v. *Peters*, 42 Texas, 7; *State* v. *Umdenstock*, 43 Texas, 555; *Buie* v. *The State*, Id. 532; *O'Connell* v. *The State*, 18 Texas, 343; *Smith* v. *The State*, 1 Texas Ct. App., 620; *Lawrence* v. *The State*, 2 Texas Ct. App., 479: *Massie* v. *The State*, 5 Texas Ct. App., 81; *Mattingly* v. *The State*, 8 Texas Ct. App., 345; *Martinez* v. *The State*, 7 Texas Ct. App., 394; *Watson* v. *The State*, 5 Texas Ct. App., 11; *Bradberry* v. *The State*, 7 Texas Ct. App., 375; *Stewart* v. *The State*, 6 Texas Ct. App., 184; *West* v. *The State*, 8 Texas Ct. App., 119; *Brown* v. *The State*, 9 Texas Ct. App., 171; *St. Clair* v. *The State*, 11 Texas Ct. App., 297.)

We think that the assignment of the perjury is an important and essential portion of the indictment, more especially where, as

in this case, the alleged false matter consists of several distinct and separate propositions. It is a constitutional right of the defendant to be informed by the indictment, in plain and intelligible words, of the nature of the charge against him, and with that degree of reasonable certainty which will enable him to prepare his defense. He should be told in the indictment wherein and to what extent the statements alleged to have been made by him were false, that he may know certainly what he is called upon to answer. We think the indictment in this case, in this respect, is fatally defective, and although it would perhaps be a sufficient indictment under the form prescribed in the act known as the "Common Sense Indictment Act" (Acts Seventeenth Legislature, p. 62, form No. 13), we think that form is itself insufficient and invalid, for the reasons stated by this court in *Williams* v. *The State*, 12 Texas Ct. App., 395.

We might content ourselves with reversing the judgment and dismissing the prosecution because of the insufficiency of the indictment, but conceiving it probable that the defendant may be again indicted and prosecuted for the alleged offense, we deem it proper that we should consider and determine other questions presented by the record, and which are likely to present themselves in any future trial of the defendant, should he be again indicted in respect to the same transaction.

In trials for the offense of perjury it is provided by statute that "no person shall be convicted except upon the testimony of two credible witnesses, or of one credible witness corroborated strongly by other evidence as to the falsity of the defendant's statement under oath, or upon his own confession in open court." (Code Crim. Proc., Art. 746.) This is but a statutory enunciation of the common law upon the same subject, and it is said that this rule is not merely technical, but is founded on substantial justice. (2 Whart. Cr. Law, sec. 1319; Whart. Cr. Ev., sec. 387; 1 Greenl. Ev., sec. 257; 3 Id., sec. 198.)

In the case at bar there is but *one* witness who testifies to the *falsity* of the defendant's statement under oath, if indeed this witness does. It therefore becomes necessary, in order to sustain this conviction, that the evidence of this single witness as to the falsity of the defendant's statement should be corroborated by *other* evidence, and not only corroborated, but *strongly* corroborated. It is contended by the defendant that this has not been done. In answer to this contention, the State relies upon the record of the proceedings in civil suit No. 10,382 in the

District Court of Galveston County, wherein Focke & Wilkins were plaintiffs and L. Gabrielsky was defendant.  This was an attachment suit founded upon the three promissory notes in relation to which the perjury is alleged to have been committed. It is argued by the State that the three notes sued upon in said suit, and the conduct of Focke & Wilkins in instituting the suit upon these notes, and in making the affidavit and giving the bond for the writ of attachment, are strongly corroborative of the evidence of the witness Wilkins as to the falsity of the sworn statement of the defendant in regard to these notes. This is the only evidence in the case which is claimed by the State to be corroborative of the evidence of the witness Wilkins as to the falsity of defendant's statement under oath.

Is this evidence corroborative within the meaning of the law? If so, is it *strongly* corroborative?  It must be borne in mind that the statute in terms requires *other* corroborative evidence. What are we to understand by this?  It can only mean that this *other* evidence must come from some other source than from the witness who is to be corroborated.  It was certainly never intended that a witness could corroborate his own testimony, by his own acts and declarations.  Such a conclusion would be absurd.  In the case before us, the defendant says under oath that the notes sued upon were executed by him without consideration, as accommodation paper.  Wilkins, the State's witness, testifies to the falsity of this statement, and to corroborate his testimony the State proves that Wilkins brought suit upon the notes, that Wilkins made affidavit in that suit, and gave bond for an attachment, and that Wilkins had never in fact used the notes as accommodation paper.  It is Wilkins all the time corroborating Wilkins.  It is not *other* corroborating evidence, but is nothing more than the evidence of the same witness, viz., his acts and declarations in regard to the subject about which he testified.

We think the record of the suit No. 10,382 was properly admitted in evidence for the purpose of showing a judicial proceeding in which the alleged false statement under oath of the defendant was used; but, when it is sought to give to these proceedings the function and dignity of corroborative evidence of the falsity of defendant's statement, we certainly cannot give our assent to such a proposition.  But, conceding that it may be treated as corroborative evidence, it certainly does not come up to the standard required by law.  It certainly cannot be

termed *strong*. It proves nothing except that Wilkins did not use the notes as accommodation notes, and that Wilkins undertook to collect the notes by legal proceedings. Is this *strong* evidence that the defendant's sworn answer in the suit was false? We are clearly of the opinion that this evidence, even could it be regarded as corroborative, and we think it cannot be so treated, is of that character which cannot be termed *strong*, and does not fill the measure of the law. (*Buie* v. *The State*, 43 Texas, 532.)

Article 745 of the Code of Criminal Procedure provides as follows: "In all cases where by law two witnesses, or one with corroborating circumstances, are required to authorize a conviction, if the requirement be not fulfilled, the court shall instruct the jury to render a verdict of acquittal, and they are bound by the instruction." Under the authority of this provision the defendant's counsel asked the court to instruct the jury as follows: "The evidence in this case as to the falsity of the defendant's statements under oath, as charged in the indictment, consists only of the testimony of one witness, and is not corroborated strongly by other evidence as to the falsity of the statement under oath, and the jury must find the defendant not guilty." This instruction was refused by the court, and we think this refusal was error.

It is made the duty of the court in such cases to first pass upon the competency and sufficiency of the evidence. This is an exception to the general rule that the jury are the exclusive judges of the credibility of the witnesses and the weight of the evidence. In the cases mentioned in Article 745, above quoted, the court is positively required to instruct the jury to acquit, when the requirements of the law as to the *quantum* of the evidence have not been fulfilled. This responsibility, thrown upon the court, cannot be shifted to the jury. If the trial court errs in its judgment as to the sufficiency of the evidence, as we think it did in this case, then the same question is presented to this court, and, in considering it, we are not bound by the verdict of the jury, because the question is one primarily for the court, and not the jury, to determine.

In this connection we will say further, that it was developed in the testimony of the witness Wilkins that his partner, Focke, and Morris, the bookkeeper of the firm of Focke & Wilkins, were both present when the conversation between Wilkins and defendant in regard to the execution of the notes occurred, and yet

neither of these gentlemen were called upon by the State to corroborate the evidence of Wilkins in relation to that conversation. It is a well-settled rule of evidence that the best evidence attainable must be adduced, and that when it is disclosed that direct evidence of a material fact is. probably in existence, circumstantial evidence of that fact cannot be resorted to without accounting for the absence of the direct evidence, which was not done in this case. (*Wilson* v. *The State,* 12 Texas Ct. App., 481, and authorities there cited.)

Upon the trial, defendant's counsel requested the court to give the following instruction, which was refused, to-wit: "If the jury believe from the evidence that the defendant, at the time of the execution of the notes in evidence, was indebted to Focke & Wilkins on open account, and that the notes were executed solely with reference to said open account, and not upon any other consideration, and that it was understood between the defendant and Focke & Wilkins, or by the defendant, that the said open account was not to be in any way affected by the execution of said notes. and that said notes were executed by the defendant for the convenience and accommodation of Focke & Wilkins, the verdict must be for the defendant, and you will find him not guilty."

This instruction was, we think, applicable to and demanded by the evidence. It is supported by the evidence of the witness Wilkins in part, if not *in toto.* In fact, taking the whole of the testimony of the witness Wilkins, it impresses our minds as corroborative, instead of destructive, of the alleged false statements of the defendant. We will not enter upon a discussion of this testimony, but will leave it, with the remark that in our judgment it is insufficient to prove perjury.

Other errors than those we have noticed are assigned, and are discussed in the brief and argument of appellant's counsel, but we do not think it necessary to pass upon them, for the reason that they are not likely to arise in the future trial of this or any similar case.

Because of the errors we have mentioned, the judgment is reversed, and, because the indictment is insufficient, the prosecuprosecution is dismissed.

*Reversed and dismissed.*

Opinion delivered February 10, 1883.