UNITED STATES v. KELSEY et al.

(*District Court, W. D. Texas, Brownsville Division.* June 16, 1890.)

1. OFFENSES AGAINST ELECTION LAWS—INDICTMENT.
    Rev. St. U. S. § 5515, provides that every officer of an election for congressman who neglects or refuses to perform any duty in regard to such election required of him by law, or who violates any duty so imposed, or who knowingly does any acts thereby unauthorized, with intent to affect any such election, shall be punished. *Held*, that an indictment charging that the defendants, members of the county commissioners' court, "unlawfully, fraudulently, corruptly, and feloniously," suppressed the return of certain ballots, without charging that the offense was committed "knowingly," and without setting out the acts which constituted such suppression, is fatally defective.

2. SAME.
    Under Rev. St. Tex. art. 1705, which requires the county commissioners' court to "open the election returns, and estimate the result, recording the state of the polls in each precinct," an indictment against the members of such court which charges that the defendants did "unlawfully, fraudulently, corruptly, and feloniously neglect and refuse to receive, estimate, and count all the ballots voted and returned to them," does not charge any offense; their duty being confined to the returns, and having no connection with the ballots.

3. SAME.
    The omission in such an indictment to allege affirmatively that the election returns were delivered to the commissioners' court is a fatal defect.

At Law. On demurrer to the indictment.
*A. J. Evans*, Dist. Atty., for plaintiff.
*J. B. Wells*, for defendants.

MAXEY, J. The questions for determination in this case arise upon demurrer to the indictment. It is alleged therein that on the 6th day of November, 1888, there was held at Roma, precinct No. 2, Starr county, Tex., a general election for a member of congress from the seventh congressional district, at which more than 200 votes were cast, and that

the votes and ballots so cast "for a representative in congress were then and there duly estimated and counted and returned by the judges and clerks of said election at said precinct No. 2, at Roma, Starr county, to the county judge of Starr county, Tex., in all respects according to the election laws of the state of Texas in such cases made and provided; and, further, that it then and there became the duty, under the laws of the state of Texas, of the county court of Starr county, Tex., the said court being then and there, to-wit, on said 6th day of November, A. D. 1888, and on the 12th day of November, A. D. 1888, composed of one J. P. Kelsey, county judge, and one James Barbour, and one Antonio Ramerez, and one Juan Gonzales Vela and one William Muquerza, and one R. Alderette, county commissioners, to receive, estimate, and count all the ballots voted and returned to them from all the precincts in Starr county, Tex., and particularly from precinct No. 2, at Roma, Tex., for a 'representative in congress, which duty said county court was bound to do and perform in the county of Starr, and in the state of Texas, and on the 12th day of November, 1888, the same being five days, exclusive of Sunday, after the said 6th day of November, A. D. 1888, under the constitution and laws of the state of Texas." The indictment further charges that on said 12th day of November, 1888, "the said J. P. Kelsey, and the said Antonio Ramerez, and the said Juan Gonzales Vela and William Muquerza and James Barbour, each and all being then and there officers of said general election for a representative in congress, so held, as aforesaid, on said 6th day of November, 1888, within and for the county of Starr, did, on said 12th day of November, 1888, unlawfully, fraudulently, corruptly, and feloniously, neglect and refuse to receive, estimate, and count all the ballots voted and returned to them from all the election precincts in Starr county, Tex., and particularly from precinct No. 2, at Roma, Tex., for a representative in congress at said general election, * * * and then and there did unlawfully, fraudulently, and corruptly and feloniously suppress the return of ballots cast at said precinct No. 2, at Roma, Tex." Four grounds of demurrer to the indictment are assigned by the defendants, which may, for convenience, be condensed into the three following: (1) The acts charged against the defendants do not constitute an offense against the laws of the United States; (2) the indictment does not charge the "defendants with any act or acts which would constitute a crime or offense, or a failure to perform any act or duty imposed upon them by the laws of the state of Texas;" (3) the "indictment is so contradictory, inconsistent, and repugnant in its averments as to be wholly void because thereof."

The offense charged against the defendants is for neglect to perform a duty imposed by the statutes of the state. That congress has the "constitutional power to enact a law for punishing a state officer of election for the violation of his duty under a state statute in reference to an election of a representative to congress" is settled by the supreme court in the following cases: *Ex parte Siebold*, 100 U. S. 371 *et seq.; Ex parte Clarke*, 1d. 403, 404; *In re Coy*, 127 U. S. 752, 753, 8 Sup. Ct. Rep. 1263. To determine, therefore, whether the defendants are charged

with the commission of an offense, it will be necessary to consider the laws of the state in connection with section 5515 of the United States Revised Statutes, upon which the indictment is founded. That section is in the following language:

"Sec. 5515. Every officer of an election at which any representative or delegate in congress is voted for, whether such officer of election be appointed or created by or under any law or authority of the United States, or by or under any state, territorial, district, or municipal law or authority, who neglects or refuses to perform any duty in regard to such election required of him by any law of the United States, or of any state or territory thereof; or who violates any duty so imposed; or who knowingly does any acts thereby unauthorized with intent to affect any such election, or the result thereof; or who fraudulently makes any false certificate of the result of such election in regard to such representative or delegate; or who withholds, conceals, or destroys any certificate of record so required by law respecting the election of any such representative or delegate; or who neglects or refuses to make and return such certificate as required by law, * * * shall be punished as prescribed in section fifty-five hundred and (*ten*) (eleven.)"

The section embraces several distinct offenses, for the commission of which the same punishment is denounced. Its purpose is to punish "every officer of an election" who may commit any of the offenses properly included within its provisions. In the present case the indictment is framed upon the following clauses of the section:

"(1) Every officer of an election * * * who neglects or refuses to perform any duty in regard to such election required of him by any law of the United States, or of any state or territory thereof;" or (2) "who knowingly does any acts thereby unauthorized, with intent to affect such election, or the result thereof."

It is insisted by defendants, in support of their demurrer, that they were not officers of election, within the meaning of the federal statutes, and therefore they are not amenable to the penalty thereby denounced. Construing section 5515 in *U. S. v. Fisher*, Judge BAXTER held that "none but officers of an election are within either the letter or spirit of the law." 8 Fed. Rep. 414–417. To the same effect are the cases of *U. S. v. Clayton*, 2 Dill. 223; *U. S. v. Baldridge*, 11 Fed. Rep. 553; and *U. S. v. Wright*, 16 Fed. Rep. 114. If none but officers of election are liable to indictment and punishment under the statute, are the defendants such officers? Are the members of a county commissioners' court, whose general official duties pertain solely to county affairs, such as managing county finances, building bridges and roads, levying county taxes, etc., (Rev. St. Tex. arts. 1514–1524,) and having no duty to perform in connection with the election except the incidental ones hereafter indicated, officers of election, within the purview of the act of congress? There are numerous adjudged cases—among them may be noted the following—which regard and treat judges of election, clerks, inspectors, commissioners of elections, and supervisors as officers of election, within the meaning of section 5515. *In re Coy*, 127 U. S. 731, 8 Sup. Ct. Rep. 1263; *Ex parte Siebold* and *Ex parte Clarke, supra; In re Coy*, 31 Fed. Rep. 794; *U. S. v. Jackson*, 25 Fed. Rep. 548; *U. S. v. Baldridge, supra; U. S. v. Wright, supra; U. S. v. Morrissey*, 32 Fed. Rep. 147; *Ex parte Perkins*, 29 Fed. Rep. 900; *U. S.*

v. *Green*, 33 Fed. Rep. 619; and *U. S.* v. *Davis*, Id. 621; *U. S.* v. *Fisher*, 8 Fed. Rep. 414. In none of the cases cited, except the last, did the court discuss the question of who are election officers, and evidently for the reason that the defendants charged were too plainly within the provisions of the statute to require argument. In *U. S.* v. *Fisher* the defendant was a supervisor of elections, deriving his authority to act from federal appointment; and the court, in holding him to be an officer of election, uses this language:

"An officer whose only official duties relate to the registration of voters as preliminary to the exercise by them of their right to vote, to be present at the polls during the time the votes are being cast, to engage in the work of canvassing the ballots, to personally scrutinize, count, and canvass each ballot cast, and to remain with the inspectors and other officers of such election until the votes are canvassed and counted, and certificates and returns are wholly completed, is an officer of the election so supervised by him, within the meaning and intention of the section under and pursuant to which the counts under consideration were framed." 8 Fed. Rep. 416.

The duties of federal supervisors are prescribed by the statutes of the United States. Under the laws of Texas, the persons termed "officers of election" evidently embrace and include only the presiding officer of election, the two judges, and two clerks of election, (title 34, Rev. St., and Acts 1883, pp. 50–52;) and it is thereby made the duty of such officers at each election precinct to hold the election, receive the ballots, and count the votes. Rev. St. arts. 1694–1696. And, when the ballots have all been counted, the managers of the election, consisting of said presiding officer, judges, and clerks, (Rev. St. art. 1673,) shall make out the returns in the manner prescribed, and deliver one of such returns to the county judge. Acts 1883, p. 51, art. 1698. The election returns are required to be delivered to the county commissioners' court by the county judge or clerk, as the case may be, on the day appointed by law to open and compare the polls, (Acts 1883, p. 51, art. 1699,) which day is declared to be the Monday next following the day of election. Id. art. 1700. In respect to such return the duty of the court is defined in the following words of the statute:

"On the Monday next following the day of election, and not before, the county commissioners' court shall open the election returns, and estimate the result, recording the state of the polls in each precinct in a book to be kept for that purpose." Id. art. 1705.

It is thus apparent that there is no duty devolving upon the commissioners' court, under the state laws, requiring it to conduct the election, count the ballots, make the returns, or do any act which has connection, either direct or remote, with holding the election. Its duty begins on the Monday next following, and is limited to opening the returns, estimating the result, and recording the state of the polls in a proper book. In the case of *U. S.* v. *Clayton*, the defendant, who was the governor of Arkansas, was indicted for the delivery of a false certificate of election to one Edwards. It was objected to the indictment that under the act of congress the defendant was not an officer of election. In sustaining the demurrer, Judge DILLON observes:

"In view of these acknowledged rules of law, the question occurs: Did congress mean by the use of the words 'officer of election' or 'election officer,' in the section of the statute on which the indictment is framed, to include the governor of a state? Is the governor an election officer? It seems to us not. These words are apt and usual words to describe the clerks and judges of election, but not to describe the governor of a state. Such is not their ordinary and usual meaning." 2 Dill. 226.

The reasoning of Judge DILLON may be appropriately applied to the indictment in this case; and it is by no means clear that congress intended to embrace within the designation "officers of election" a county commissioners' court. It was intimated by the district attorney, upon the argument, that Mr. Justice BRADLEY, in the case of *U. S.* v. *Davis, Governor, etc.*, tried some years ago at Austin, had construed the words of the act to include the governor of a state. If there was a written opinion in that case, it does not appear to have been reported; and, upon examination of the records, I find the papers of the case missing from the files. In my investigation, therefore, of the questions here presented, I am deprived of the views of the learned justice. For the present a definite expression of opinion upon the point discussed will be withheld; and, assuming defendants to be included within the intent of the statute, other objections to the indictment will be considered.

Counsel for defendants further earnestly insisted in argument that the indictment does not charge against the defendants "a failure to perform any act or duty imposed upon them by the laws of the state of Texas." The essential averments of the indictment, important in this connection to be noticed, are the following: (1) The ballots cast at Roma precinct "were then and there duly estimated and counted, and returned by the judges and clerks of said election * * * to the county judge of Starr county, Tex., in all respects according to the election laws of the state." (2) That it then and there became the duty of the county court (evidently intended by the pleader for county commissioners' court) "to receive, estimate, and count all the ballots voted and returned to them from all the precincts, * * * and particularly from precinct No. 2 at Roma," which duty said court was bound to perform on the 12th day of November, 1888. (3) It is charged that the defendants did, on said 12th day of November, 1888, "unlawfully, fraudulently, corruptly, and feloniously, neglect and refuse to receive, estimate, and count all the ballots voted and returned to them from all the election precincts, * * * and particularly from precinct No. 2 at Roma." The indictment against defendants is for a neglect and refusal to perform a statutory duty. In such a case the pleader should use the statutory words, or employ equivalent words clearly showing that the offense charged is embraced within the intent of the statute. "It is, as a general rule," says Mr. Bishop, "sufficient in the indictment to charge the defendant with acts coming fully within the statutory description, in the substantial words of the statute, without any further expansion of the matter." 1 Bish. Crim. Proc. § 611. The same author announces the result reached by him after an examination of adjudicated cases in the following language:

"The indictment must employ so many of the essential words of the statute as shall enable the court to see on what statute it is framed; and, beyond this, it must use all the other words which are essential to a complete description of the offense; or, if the pleader chooses, words which are their equivalents in meaning; or, if again the pleader chooses, words which are more than their equivalents, but which include within themselves the full significations of the words not used." Id. § 612.

Referring to the general rule stated by Mr. Bishop, as to the manner of pleading statutory offenses, the supreme court says:

"But to this general rule there is the qualification, fundamental in the law of criminal procedure, that the accused must be apprised by the indictment, with reasonable certainty, of the nature of the accusation against him, to the end that he may prepare his defense, and plead the judgment as a bar to any subsequent prosecution for the same offense. An indictment not so framed is defective, although it may follow the language of the statute." *U. S.* v. *Simmons,* 96 U. S. 362.

Upon the same subject the court, in *U. S.* v. *Carll,* says:

"And the fact that the statute in question, read in the light of the common law, and of other statutes on the like matter, enables the court to infer the intent of the legislature, does not dispense with the necessity of alleging in the indictment all the facts necessary to bring the case within that intent." 105 U. S. 612, 613; *U. S.* v. *Mills,* 7 Pet. 142; *U. S.* v. *Britton,* 107 U. S. 661, 662, 2 Sup. Ct. Rep. 512; *U. S.* v. *Staats,* 8 How. 44.

"Every ingredient of which the offense is composed must be accurately and clearly alleged." *U. S.* v. *Cook,* 17 Wall. 174. And says the court:

"It is an elementary principle of criminal pleading that where the definition of an offense, whether it be at common law or by statute, includes generic terms, it is not sufficient that the indictment shall charge the offense in the same generic terms as in the definition; but it must state the species,—it must descend to particulars." *U. S.* v. *Cruikshank,* 92 U. S. 558.

See, also, *Francis* v. *State,* 21 Tex. 286; *Henderson* v. *State,* 14 Tex. 510. And it is said by Judge DILLON in *U. S.* v. *Whittier* that—

"Statutes creating crimes will not be extended by judicial interpretation to cases not plainly and unmistakably within their terms. If this rule is lost sight of, the courts may hold an act to be a crime when the legislature never so intended. If there is a fair doubt whether the act charged in the indictment is embraced in the criminal prohibition, that doubt is to be resolved in favor of the accused." 5 Dill. 39, citing authorities.

Applying the foregoing rules to the present indictment, can it be said that its averments are sufficient to charge a crime against the defendants? The specific duty of the commissioners' court is averred to be "to receive, estimate, and count all the ballots voted and returned to them * * * from Roma precinct;" and the direct charge is that the defendants neglected and refused to perform that duty; that is, "to receive, estimate, and count all the ballots voted and returned to them" from Roma precinct. The duty enjoined by the statute upon the commissioners' court is that it "shall open the election returns and estimate the result, recording the state of the polls in each precinct in a book to be kept for that purpose." With the ballots, either as to receiving, estimating, or count-

ing, the court has nothing to do. The ballots are required by law to be placed by the managers of election in a box, which must be securely fastened, and delivered to the clerk of the county court, to be kept by him for the period of a year, and then destroyed, unless a contest should grow out of the election, in which event the clerk is required to deliver the ballot-box to a competent officer having process therefor. Rev. St. Tex. arts. 1702, 1703. And the failure on the part of the clerk to securely keep the ballot-box containing tickets, and his failure, after the expiration of one year, to destroy the ballots, are declared to be offenses punishable by fine and imprisonment. Pen. Code, arts. 174–176. It will thus be seen that the duty of the commissioners' court is confined to the returns. It acts upon the returns, not the ballots. Articles 1698–1700 of the Revised Statutes of Texas, as amended by the act of 1883, (Gen. Laws 1883, p. 51,) prescribe the duties of the managers in making and disposing of the election returns, and are as follows:

"Art. 1698. When the ballots have all been counted the managers of the election, in person, shall make out triplicate returns of the same, certified to be correct, and signed by them officially, showing—*First*, the total number of votes polled at such box; *second*, the number polled for each candidate. One of which returns, together with poll-lists and tally-lists, shall be sealed up in an envelope, and delivered by one of the managers of election to the county judge of the county. Another of said returns, together with poll-lists and tally-lists, shall be delivered by one of the managers of election to the clerk of the county court, to be kept by him in his office, open to inspection by the public, for twelve months from the day of the election; and the other of said returns, poll and tally lists, shall be kept by the presiding officer of the election for twelve months from the day of election. Art. 1699. In case of a vacancy in the office of county judge, or the absence, failure, or inability of that officer to act, the election returns shall be delivered to the clerk of the county court of the county, who shall safely keep the same in his office, and he or the county judge, as the case may be, shall deliver the same to the county commissioners' court on the day appointed by law to open and compare the polls. Art. 1700. The election returns shall be delivered, as provided in the two preceding articles, on or before the Monday next following the day of election."

After the election returns are delivered to the court, it then becomes its duty, at the time designated, to proceed with its prescribed work, to open the same, and to estimate therefrom the result. In setting forth the statutory duty of defendants, and their failure to perform it, the pleader has not used the words of the statute; nor are apt and appropriate words employed to charge the breach or omission of any duty enjoined by law.

If the averments of the indictment were otherwise sufficient, it may be further said that it is defective in failing to allege affirmatively that the election returns were delivered to, or ever were in the possession of, the commissioners' court. The averment is that the delivery was made by the judges and clerks of the election to the county judge, while the law requires the returns to be delivered by the managers to the judge, or, in case of his absence, etc., to the clerk; and the county judge or clerk, as the case may be, "shall deliver the same to the county commis-

sioners' court." The county judge does not constitute the commissioners' court. He is simply a member thereof; and three members, including the judge, are required to form a business quorum. Rev. St. art. 1511. Delivery of the returns, therefore, to the county judge, is in no proper sense a delivery to the commissioners' court; and an indictment charging the defendants with refusing and neglecting to open the returns, and estimate the result, should contain some positive and direct averment showing that such returns had been delivered to them, or were in their possession or under their control. Otherwise, the bare charge of non-performance of a statutory duty would be sufficient, in the absence of averments showing that the party charged was in a position, or had the ability, to act or do the thing required. And, in this connection, it is worthy of note that the statute expressly provides:

"No election returns shall be opened or estimated unless the same shall have been returned in accordance with the provisions of this chapter." Rev. St. Tex. art. 1706.

The remaining and concluding clause of the indictment will be briefly noticed. It immediately follows the clause above considered, and is in the following words: "And then and there did unlawfully, fraudulently, and corruptly and feloniously suppress the return of ballots cast at said precinct No. 2 at Roma, Tex." The first clause is referable to that part of section 5515 of the Revised Statutes of the United States which makes it an offense for an officer of election to neglect or refuse "to perform any duty in regard to such election required of him by any law of the United States or of any state." The clause now considered charges affirmatively the doing of an unlawful thing, an act unauthorized by the law of the state, to-wit, the suppression of the return of ballots, and is more appropriately referred to that part of section 5515 which denounces a penalty against an officer of election "who knowingly does any acts thereby [by the laws of the United States or of the state] unauthorized, with intent to affect any such election, or the result thereof." The indictment purports to charge two distinct offenses, which should be set out in separate counts. Rev. St. § 1024; 1 Bish. Crim. Proc. §§ 421, 426, 429. And see *U. S. v. Pirates,* 5 Wheat. 201, 202; *State* v. *Randle,* 41 Tex. 299. And it, therefore, may be obnoxious to the objection of duplicity, which is defined to be "the joinder of two or more distinct offenses in one count." The criminal law never permits this." 1 Bish. Crim. Proc. § 432. But if, according to the prescribed rules of criminal pleading, it be permissible to reject as surplusage the clause held to be defective, (Id. § 440; *State* v. *Dorsett,* 21 Tex. 657; *Henderson* v. *State,* 2 Tex. App. 89,) it is nevertheless true that the other or concluding clause should sufficiently charge an offense; and, failing to do so, the indictment must fall. Recurring, then, to the concluding clause, does the charge that the defendants "did unlawfully, fraudulently, and corruptly and feloniously suppress the return of ballots cast" sufficiently set out an offense against the statute? Under the federal statute, if any person shall "knowingly" do any unauthorized act, he subjects himself to the penalty denounced. The statute of the state makes the "willful" suppression of any "election return" a criminal offense, in these words:

"If any person shall  *  *  *  willfully secrete, suppress, or destroy any ballots, election return, or certificate of election, he shall be punished by a fine not exceeding three thousand dollars." Pen. Code, art. 170.

Assuming that the expression, "return of ballots," as alleged in the indictment, and "election returns," may be treated as synonymous, it is still not charged that the suppression was knowingly and willfully committed. Construing the two statutes, federal and state, in conjunction, the words, "knowingly and willfully," in my opinion, are necessary to be alleged in order to make out the offense; and these are not supplied by the words of the pleader, "unlawfully, fraudulently, and corruptly and feloniously" suppressed the return of ballots cast. In the case of *State* v. *Webb*, defendant was indicted for perjury. A motion to quash the indictment was sustained, and the judgment was affirmed by the supreme court. Discussing the question, the court says:

"The indictment, when compared with the statute, is found wanting in a material charge set forth in the Criminal Code, in its definition of perjury, which is declared to be 'a false statement, either written or verbal, deliberately and willfully made,' etc. Pasch. Dig. art. 1909. The indictment omitted to charge the defendant with having deliberately and willfully sworn falsely. It is true the district attorney, in framing the indictment, uses an abundance of expletives, such as 'willfully, unlawfully, knowingly, corruptly, and feloniously did commit willful and corrupt perjury,' and that the accused did 'willfully, knowingly, corruptly, and falsely state under oath,' and that the accused 'did then and there, upon the trial of said case, unlawfully, willfully, knowingly, and feloniously commit willful and corrupt perjury.' But in all the charges quoted the short and simple statement required by the Code is omitted. There is no charge that the false statement was 'deliberately and willfully made.' We are left to inference in ascertaining from the indictment that the accused is charged with the crime of perjury as defined in the Code. If the definition, and material facts comprised in the definition, as set forth in the statute, be omitted in any one material circumstance, the jurisdiction will be bad. 1 Archb. Crim. Pr. & Pl. 282, and American notes. An indictment which describes the offense as having been done feloniously, unlawfully, and maliciously will not be good where the statute uses the words 'willfully and maliciously.' *State* v. *Delue*, 1 Chand. 166." *State* v. *Webb*, 41 Tex. 70. See *State* v. *Powell*, 28 Tex. 629, 630; *Juaraqui* v. *State*, Id. 626.

But the indictment is obnoxious to other objections. The charge here considered is, in general terms, that the defendants suppressed the return of ballots. Does such an allegation meet the requirements of correct pleading? In *U. S.* v. *Staats* it was held by the court that the charge should distinctly allege all the essential requisites that constitute the offense. "Nothing is to be left to implication or intendment." *U. S.* v. *Staats*, 8 How. 44; *U. S.* v. *Hess*, 124 U. S. 486, 8 Sup. Ct. Rep. 571; *Alexander* v. *State*, 29 Tex. 496. The charge of suppression is a mere conclusion deducible from facts and circumstances which should be appropriately averred. The generic term is employed. The pleader does not descend to particulars. The acts constituting the suppression are not set out. Nor, indeed, is it averred that the "return of ballots" was ever in the custody, or under the control, of the commissioners' court. The essential facts and particulars of the offense charged are left, in the absence of appropriate averments, to mere implication and inference;

and, under the rules of criminal pleading, the clause must be held de-fective. It may be further said that, under the particular subdivision of the federal statute which applies to this clause of the indictment, it would seem to be requisite for the indictment to further aver that the unauthorized act of suppression was committed with the intent to affect the election, or the result thereof. 31 Fed. Rep. 797, and the cases of *Wright* and *Baldridge*, before cited. For the reasons given the indictment is insufficient, and the demurrer of defendants must be sustained; and it is so ordered.