## CAPONE v. UNITED STATES.
### No. 4672.

Circuit Court of Appeals, Seventh Circuit.
Feb. 27, 1932.

Rehearing Denied March 23, 1932.

928

nue Act of 1926, 44 Stat. 116 (26 USCA § 1266) ; and on two counts which charge misdemeanors of failing to file returns for the respective years 1928 and 1929, in violation of section 146(a) [2] of the Revenue Act of 1928, 45 Stat. 835 (26 USCA § 2146 (a).

There were two indictments; and they were consolidated and tried at the same time. The first contained but one count and charged a felony under section 1114 (b), supra; the second indictment contained twenty-two counts, of which counts 13 and 18 charged misdemeanors under section 146 (a), supra, and the other counts charged felonies under section 1114 (b), supra. Appellant was found guilty of the felonies charged in counts 1, 5, and 9, and of misdemeanors charged in counts 13 and 18 of the second indictment. As to all other counts of that indictment, and also as to the charge in the first indictment, appellant was found not guilty.

Appellant's demurrer to each count of each indictment was overruled; and, after verdict, he filed a motion in arrest of judgment, which was also overruled. With the exception of the year involved and the amounts of income and tax referred to, the felony counts are identical. This is also true as to the counts charging misdemeanors, and, with the exception of jurisdictional facts, the substance of one count of each class is set forth in the margin.[3]

---

this title or the payment thereof, shall * * * be guilty of a felony. * * * "

[2] "Any person required under this title to pay any tax, or required by law or regulations made under authority thereof to make a return * * * for the purposes of the computation, assessment, or collection of any tax imposed by this title, who willfully fails to pay such tax, make such return * * * at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor. * * * "

[3] "Count 1. * * * Alphonse Capone * * * hereinafter in this indictment sometimes called the defendant, on, to wit, the 15th day of March, 1926, * * * unlawfully and fraudulently did then and there willfully attempt to evade and defeat an income tax in the sum of, to wit, $55,365.25, imposed by an Act of Congress approved February 26, 1926, * * * known as the Revenue Act of 1926, upon his net income had and derived during the calendar year ended December 31, 1925, that is to say, his gross income had and derived during said calendar year less the deductions allowed under Title II (Income Tax) of said Act of Congress ; that said willful and fraudulent attempt to evade and defeat said income tax was by the means and in the manner following, that is to say:

"That the said Alphonse Capone, * * * during the calendar year 1925 was an individual who was married and living with his wife and who on December 31, 1925, had one dependent, and whose annual accounting period was on the basis of the calendar year and not on the basis of a fiscal year, and whose legal residence and principal place of business during said calendar year and until and including March 15, 1926, were within the Eastern

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

This appeal is from a conviction on three counts which charge felonies of willfully attempting to evade and defeat income tax for the respective years 1925, 1926, and 1927, in violation of section 1114 (b)[1] of the Reve-

[1] "* * * any person who willfully attempts in any manner to evade or defeat any tax imposed by

Michael J. Ahern and Albert Fink, both of Chicago, Ill., for appellant.

George E. Q. Johnson, U. S. Atty., Jacob I. Grossman, Samuel G. Clawson, and Dwight H. Green, Asst. U. S. Attys., all of Chicago, Ill., and William J. Froelich, Sp. Asst. to Atty. Gen.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

SPARKS, Circuit Judge (after stating the facts as above).

The errors relied upon in this appeal are that the court erred in overruling the demurrer to each count of the indictment upon which appellant was found guilty, and in overruling his motion in arrest of judgment as to each of said counts.

It is first contended by appellant that the demurrer and motion in arrest should each have been sustained as to the felony counts, because, as he insists, those counts charge the alleged offense in the generic terms of the statute, without specification of particulars; that is to say, he contends that, in order to render the felony counts impervious to either the demurrer or the motion in arrest, the particular attempts to evade and defeat the tax upon which the government relied for a conviction should have been pleaded with particularity.

The rights of appellant which give rise to the questions herein raised are derived from Articles V and VI of the Amendments to the Constitution of the United States, and in so far as they are applicable read as follows:

"Article V. * * * nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb. * * *"

"Article VI. In all criminal prosecutions, the accused shall enjoy the right * * * to be informed of the nature and cause of the accusation. * * *"

One of the reasons for the adoption of the clause referred to in Article VI was to furnish a means of preventing a violation of the

Division of the Northern District of Illinois and within the said First Internal Revenue Collection District of Illinois, and who had and derived during the calendar year ended December 31, 1925, a gross income for said calendar year of over $5,-000.00, to wit, $257,286.98, and who was after the 31st day of December, 1925, and on or before the 15th day of March, 1926, required by the Act of Congress aforesaid to make to the Collector of Internal Revenue for the Internal Revenue Collection District aforesaid, under oath, a return stating specifically the items of his gross income and the deductions and credits allowed under Title II of the Act of Congress aforesaid for the purposes of computation, assessment and collection of any tax imposed by Title II of said Act of Congress.

"That the said defendant was further required by the Act of Congress aforesaid to pay to the Collector of Internal Revenue for the Internal Revenue Collection District aforesaid for the calendar year ended December 31, 1925, an income tax upon his net income * * * by reason of the fact, which the said grand jurors charge on their oath to be a fact, that said defendant had and derived and received during said calendar year a gross income of, to wit, $257,286.98, from which said gross income he, the said defendant, was entitled to deductions for said calendar year 1925 in the sum of, to wit, $1.00, and no more, and had and derived and received a net income during said calendar year 1925 of, to wit, $257,286.98, upon which said net income for the calendar year last aforesaid there became due on March 15, 1926, to the United States of America, after the allowance of all credits, a tax of, to wit, $55,365.25, of which said tax at least one-fourth should have been paid then and there by the said defendant to the Collector of Internal Revenue aforesaid.

"That the said defendant, * * * on, to wit, March 15, 1926, well knowing all the premises, unlawfully and fraudulently did then and there willfully attempt to evade and defeat the income tax aforesaid upon his said net income for the calendar year 1925; * * *"

"Count 13. * * * That on, to wit, the 15th day of March, 1929, * * * the said Alphonse Capone * * * unlawfully did willfully and knowingly fail to make a return of income required by an Act

of Congress approved May 29, 1928, * * * which said Act of Congress is known as the Revenue Act of 1928, that is to say, a return stating specifically the items of his gross income had and derived during the calendar year 1928 and the deductions and credits allowed under Title I (Income Tax) of said Act of Congress; that said willful failure to make the return aforesaid was under the circumstances following, that is to say:

"That said defendant during the calendar year 1928 was an individual who was married and living with his wife and who on December 31, 1928, had one dependent, and whose annual accounting period was on the basis of the calendar year and not on the basis of a fiscal year, and whose legal residence and principal place of business during said calendar year and until and including March 15, 1929, were within the Eastern Division of the Northern District of Illinois and within said First Internal Revenue Collection District of Illinois, and who had and derived during the calendar year ended December 31, 1928. a gross income for said calendar year of over $5,000.00, to wit, $140,536.93, and who was after the close of the calendar year 1928 and on or before the 15th day of March, 1929, required by the Act of Congress aforesaid to make to the Collector of Internal Revenue for the Internal Revenue Collection District aforesaid, under oath, a return stating specifically the items of his gross income and the deductions and credits allowed under Title I of the Act of Congress aforesaid for the purposes of computation, assessment and collection of any tax imposed by said Title I of said Act of Congress; that the said defendant, having between the close of the calendar year 1928 and the 15th day of March, 1929, failed to make the return aforesaid, unlawfully did, on said 15th day of March, 1929, within the judicial division and district aforesaid, and within the collection district aforesaid, and within the jurisdiction of this court, then and there willfully fail to make the return aforesaid stating specifically the items of his gross income and the deductions and credits allowed under Title I of the said Act of Congress, or any return whatsoever, to the Collector of Internal Revenue for the Internal Revenue Collection District aforesaid as required by the Act of Congress aforesaid or to any other proper officer of the United States. * * *"

right guaranteed by the clause referred to in Article V.

In interpreting these constitutional provisions, courts have quite generally held that where the offense is purely statutory, having no relation to the common law, it is, as a general rule, sufficient in the indictment to charge the defendant with acts coming fully within the statutory description in the substantial words of the statute, without any further expansion of the matter; but it is also true that the accused must be apprised by the indictment, with reasonable certainty, of the nature of the accusation against him, to the end that he may prepare his defense and plead the judgment as a bar to any subsequent prosecution for the same offense. United States v. Simmons, 96 U. S. 360, 24 L. Ed. 819.

The cases are legion in which indictments have been attacked by the same methods and for the same reason as are now under discussion. In many such cases the indictments have been held bad and in many they have been held good as tested by the constitutional provisions above referred to, depending in each case upon the particular facts then before the court. The facts in each ·case, of course, were different, but in each case the question presented was the same: Were the facts pleaded with such particularity as to apprise the accused of the nature of the crime with such certainty as to enable him to prepare his defense and to plead the judgment as a bar to any subsequent prosecution for the same offense? In some instances it was held that the indictments were sufficient which merely described the crime in the language of the statute, because the language of the statute described the crime with such particularity as to guarantee the constitutional rights above referred to. In other cases it was held that the indictments were bad which merely followed the language of the statute, not because of any hard and fast rule to that effect, but because the language of the particular statute then before the court did not describe the crime with sufficient particularity as to accord the defendant his constitutional rights above referred to.

Appellant relies largely upon the principles laid down in United States v. Cruikshank, 92 U. S. 542, 557, 23 L. Ed. 588. The indictment in that case contained sixteen counts, the first eight of which charged defendants with having banded together with the unlawful and felonious intent to injure, oppress, threaten, and intimidate two colored citizens of the United States, and with

the further intent of thus hindering and preventing said colored citizens in their respective free exercise and enjoyment of their rights and privileges accorded them under the Federal Constitution. The next eight counts are a repetition of the first eight, except that, instead of the words "banded together," the words "combined, conspired, and confederated together" are used. The court held that all counts except 5, 8, 13, and 18 referred to rights which were guaranteed, not by the Federal Constitution, but by the Constitution of Louisiana, and for that reason no federal crime was charged in any of said counts. Counts 5, 8, 13, and 18 charged, in substance, that the intent was to hinder and prevent the two colored citizens in the free exercise and enjoyment of "every, each, all and singular" of the rights granted them by the Federal Constitution. There was no specification of any particular right, but the language was broad enough to cover all. The court said: "According to the view we take of these counts, the question is not whether it is enough, in general, to describe a statutory offence in the language of the statute, but whether the offence has here been described at all. * * * It is an elementary principle of criminal pleading, that where the definition of an offence, * * * includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species,—it must descend to particulars."

As illustrative of this statement, the court further said: "It is a crime to steal goods and chattels; but an indictment would be bad that did not specify with some degree of certainty the articles stolen. This, because the accused must be advised of the essential particulars of the charge against him, and the court must be able to decide whether the property taken was such as was the subject of larceny. So, too, it is in some States a crime for two or more persons to conspire to cheat and defraud another out of his property; but * * * an indictment for such an offence must contain allegations setting forth the means proposed to be used to accomplish the purpose. · This, because, to make such a purpose criminal, the conspiracy must be to cheat and defraud in a mode made criminal by statute; and as all cheating and defrauding has not been made criminal, it is necessary for the indictment to state the means proposed, in order that the court may see that they are in fact illegal. * * * So here, the crime is made to consist in the unlawful combination with an in-

tent to prevent the enjoyment of any right granted or secured by the Constitution, etc. All rights are not so granted or secured. Whether one is so or not is a question of law, to be decided by the court, not the prosecutor."

In other words, the court held that the right about to be violated should be particularized in order that the court might say, as a matter of law, whether such right was guaranteed by the Constitution.

It will be observed in that case that the court was dealing with a certain right which was threatened with violation, which right, although not specifically designated, was alleged to be guaranteed by the Federal Constitution to certain citizens named. The controversy in that case related only to the particularization of that right and not to the specific acts of defendants by which it was alleged that defendants had attempted to interfere with that right. Indeed, no complaint was made as to those allegations, although they were made in the most general terms.

In the instant case the right alleged to be violated is that of the government to collect an income tax from appellant. Under the ruling of the Cruikshank Case, it was therefore necessary that the indictment should state facts from which the court, as a matter of law, could say that there was an income tax due from appellant to the government, for all income is not taxable. The indictment is not deficient in this respect, for it states the total amount of appellant's income for the year in controversy; it sets forth the credit to which appellant is entitled; it describes his civil condition as that of a married man with one dependent; and informs him as to the exact amount of the tax due. From these allegations, therefore, the court could say that the tax was due and owing, and the error which rendered the Cruikshank indictment invalid was thus eliminated in the instant indictment.

But it is contended by appellant that the indictment should have specified the means by which he attempted to evade or defeat the payment of the tax. Neither the Cruikshank Case nor any other case which we have been able to find supports this contention. In the Cruikshank Case it was stated that all rights are not guaranteed by the Federal Constitution, and that therefore, as a matter of law, a charge of conspiracy to defeat a citizen's constitutional right must show that the right threatened is one conferred by the Constitution. In other words, if a certain right is ex-

cepted in the definition of the crime, facts must be pleaded to avoid the exception.

But in the instant case there are no exceptions, for the statute says that every attempt to evade or defeat the payment of income tax is a violation of law. What was a question of law in the Cruikshank Case, by reason of existing exceptions, is in the instant case a question of fact for the jury because of the absence of exceptions.

We are convinced that the allegation in relation to appellant's attempt to evade and defeat the payment of the tax in the instant case is sufficient, and that the objection thereto is one of form rather than of substance. The form used is indeed quite general, and this fact would have abundantly justified appellant in asking the court to require the district attorney to furnish a bill of particulars as to the specific attempts to evade and defeat, and we cannot presume that the request would have been refused (Rosen v. United States, 161 U. S. 29, 16 S. Ct. 434, 480, 40 L. Ed. 606); but appellant made no such request, and he now has no reason to complain. The validity of the counts charging felonies is abundantly supported by the following cases: United States v. Gooding, 12 Wheat. (25 U. S.) 460, 6 L. Ed. 693; United States v. Simmons, 96 U. S. 364, 24 L. Ed. 819; Dunbar v. United States, 156 U. S. 185, 15 S. Ct. 325, 39 L. Ed. 390; Connors v. United States, 158 U. S. 408, 15 S. Ct. 951, 39 L. Ed. 1033; Durland v. United States, 161 U. S. 306, 16 S. Ct. 508, 40 L. Ed. 709; Ledbetter v. United States, 170 U. S. 606, 18 S. Ct. 774, 42 L. Ed. 1162; Pounds v. United States, 171 U. S. 35, 18 S. Ct. 729, 43 L. Ed. 62; Armour Packing Co. v. United States, 209 U. S. 56, 28 L. Ed. 428, 52 L. Ed. 681; Bartell v. United States, 227 U. S. 427, 33 S. Ct. 383, 57 L. Ed. 533; Lamar v. United States, 241 U. S. 103, 36 S. Ct. 535, 60 L. Ed. 912; Konda v. United States (C. C. A.) 166 F. 91, 22 L. R. A. (N. S.) 304; Hardesty v. United States (C. C. A.) 168 F. 25; Enders v. United States (C. C. A.) 187 F. 754; May v. United States (C. C. A.) 199 F. 42; Marhoefer v. United States (C. C. A.) 241 F. 48; Case v. United States (C. C. A.) 6 F.(2d) 530; Graffi v. United States (C. C. A.) 22 F.(2d) 593.

In a certain class of cases cited by appellant, where the act charged is a crime only under certain conditions, it was held that those conditions must be alleged to exist in order to render the indictment valid. Thus in Batchelor v. United States, 156 U. S. 426,

15 S. Ct. 446, 39 L. Ed. 478, an indictment was held bad which charged misapplication of bank funds, but did not charge that the misapplication was unlawful; in United States v. Kelsey (D. C.) 42 F. 882, defendant was charged with suppressing election ballots, but it was not alleged that he knowingly did so; in Kellerman v. United States (C. C. A.) 295 F. 796, defendant was charged with bribery of a United States officer, but the indictment did not allege that the person bribed was a United States officer; in Boykin v. United States (C. C. A.) 11 F.(2d) 484, defendant was charged with attempting to bribe a prohibition agent with intent to influence him as to matters and proceedings then pending, but it was not alleged that such matters related to the agent's duties as prohibition officer; in Aroniss v. United States (C. C. A.) 13 F.(2d) 620, defendant was charged with maintaining a common nuisance at a certain place where intoxicating liquors were kept, and the court held that the facts constituting the nuisance must be alleged, because in some instances intoxicating liquor may be lawfully kept. Like rulings were made in United States v. Carll, 105 U. S. 611, 26 L. Ed. 1135; Grimsley v. United States (C. C. A.) 50 F.(2d) 509; United States v. Berger (D. C.) 9 F.(2d) 167; Fontana v. United States (C. C. A.) 262 F. 283; Pettibone v. United States, 148 U. S. 197, 13 S. Ct. 542, 37 L. Ed. 419. In the case last referred to it is said that, when the criminality of a conspiracy consists in an unlawful agreement to compass or promote some criminal or illegal purpose, that purpose must be fully and clearly stated; while, if the criminality of the offense consists in the agreement to accomplish by criminal or unlawful means a purpose not in itself criminal or unlawful, the means must be set out.

In other cases cited by appellant the indictments were held bad on account of indefiniteness as to allegations of material facts under circumstances which would have rendered it very difficult indeed for the defendant to have prepared his defense, or to have been protected against a second jeopardy for the same offense. In United States v. Simmons, supra, defendant was charged with having caused and procured a still to be used at a certain place for distilling. The court held that it was necessary to name the person or persons who were so procured by the defendant or to allege that the name or names were unknown, but that it was not necessary to set forth the special means employed. In United States v. Hess, 124 U. S. 483, 8 S. Ct. 571, 31 L. Ed. 516, defendant was charged with devising a scheme to defraud divers unknown persons (which scheme was not described) with intention to effect such schemes by inciting such unknown persons to communicate with him by and through the United States post office. In Batchelor v. United States, supra, defendant was charged with misapplying certain sums, each misapplication constituting a separate crime. There were many misapplications referred to generally, but neither the amounts nor the means employed were specified, and it was quite apparent that neither constitutional right was protected. In McKenna v. United States (C. C. A.) 127 F. 88, defendant was charged with conspiracy to injure certain named persons in the free exercise and enjoyment of a right, not naming the right. In Larkin v. United States (C. C. A.) 107 F. 697, a charge was made of fraudulently using the United States mails to defraud definite individuals—not the public nor a class—and their names were not given, and the indictment was held bad for that reason. In Jarl v. United States (C. C. A.) 19 F.(2d) 891, the charge was for transportation and sale of intoxicating liquor, and the allegations were so indefinite as to place, means of transportation, the person to whom the sale was made, and the kind of liquor in controversy, as to furnish no protection to defendant's constitutional rights. In United States v. Kelsey, supra, the indictment was held bad because of the absence of allegations which the statute required. In Ledbetter v. United States, supra, Armour Packing Co. v. United States, supra, and United States v. Gooding, 12 Wheat. (25 U. S.) 460, 6 L. Ed. 693, the crimes were charged in the language of the statute, and the indictments were held sufficient. The Armour Case charged the accepting of rebates prohibited by the Elkins Act (49 USCA §§ 41–43), although the details of the device by which the rebates were received were not set out. In Anderson v. United States (C. C. A.) 260 F. 557, the indictment charged a conspiracy to steal goods, not describing them, which were moving in interstate commerce; and in Collins v. United States (C. C. A.) 253 F. 609, the charge was for making and conveying false reports with intent to interfere with military and naval operations, and the reports were not described or set forth. In Miller v. United States (C. C. A.) 136 F. 581, defendant was charged with knowingly and willfully procuring the presentation to the Commissioner of Pensions of a false and fraudulent writing, and it was not alleged whom defendant had procured to present it, nor was it alleged that such person's name was unknown. In

Pierre v. United States (C. C. A.) 275 F. 352, it was charged that defendant made threats to take the life of the President of the United States, but did not allege that they were made in the presence of any person. In Boykin v. United States, supra, defendant was charged with bribery of a prohibition officer; and, besides other defects above referred to, the court said that the crime charged involved both an act and intent, and that the indictment was not sufficiently specific, although the government knew which act it would rely upon, but defendant did not know, and was not sufficiently apprised with relation thereto.

 In all the cases relied upon by appellant which we have specifically referred to, as well as other cases which he has cited, it is quite apparent that the defendant's constitutional rights were not sufficiently protected by the allegations of the indictment; but we find no such conditions existing with relation to the indictment now before us. It is not to be denied that appellant should be fully protected against a second or subsequent jeopardy for any offense involved in the instant indictment, and we think he is so protected. When the government, without particularization, chooses to make a general charge of means employed to effect a certain criminal purpose at a given time, whether under such conditions a defendant may successfully claim protection against a subsequent jeopardy for such offense effected at such time by any means which might have been given in evidence at the former trial, we are not called upon to decide. It is quite obvious, however, that he cannot be placed in jeopardy a second time for such offense which was effectuated by any means relied upon at the first trial and which were given in evidence. To accomplish such protection, the entire record of the former trial, as well as parol evidence, if necessary for that purpose, is admissible in the second trial. Dunbar v. United States, supra.

 While it is true that appellant tested the sufficiency of each count of the indictment by demurrer, yet, if his criticism with relation to the sufficiency of the allegations be correct, we think that he was neither surprised nor harmed by the court's ruling in respect thereto. We base this conclusion upon the following facts which appear of record:

The indictment was returned June 5, 1931, and after counsel appeared for appellant he pleaded guilty on June 16. The cause was first continued until June 30, and again to July 30, on which last date the court informed appellant that he would be subjected to all proper questions, whereupon, on motion of his counsel and by consent of the court, appellant withdrew his plea of guilty and entered a plea of not guilty, and the cause was continued to September 8, and on September 10 it was set for trial on October 6.

On September 25 appellant's counsel asked leave to amend the record in order that appellant might file a plea in abatement and demurrer. After some discussion relative to the nearness of the trial date, the court said it would give appellant an opportunity on September 29 to argue before trial any point contended by appellant to be fatal to the case. Upon inquiry as to the points to be raised, counsel replied that he had some points that had not been presented in the O'Brien Case (which had previously been tried by that court and was then pending on appeal in this court, and has since been affirmed, 51 F. (2d) 193, and certiorari denied November 30, 1931, 52 S. Ct. 129, 76 L. Ed. ——), and some that had been presented, but which, in his opinion, had not been properly argued in that case; and that if a certain count was upheld in the O'Brien Case that decision would control only as to the particular attack made on the count in that case. The trial court said that if counsel had anything new it would hear him. At that time counsel for appellant sought an order stopping any further examination of witnesses before the grand jury then sitting. The court refused, stating that as a result of the argument on demurrer the court might find the indictment invalid, and it might be necessary for the district attorney to obtain another indictment. The court did not then permit amendment of the record or withdrawal of the plea of not guilty, but continued the motion to amend to September 29, so that by that time counsel would know whether he intended to file a plea in abatement.

On September 29 counsel moved to withdraw the plea of not guilty for the purpose of filing a demurrer. The court overruled the motion to correct the record, but granted motion to withdraw the plea of not guilty, and permitted the quite lengthy demurrer to be filed. The court then announced that the demurrer would then be heard, but counsel for appellant stated he did not desire to make any argument on it—that he understood the court would not care to hear any point based on anything that had already been decided by the Circuit Court of Appeals; that some of the principal points of the demurrer chal-

lenged the correctness of the ruling of the Circuit Court of Appeals; and that almost every other point that occurred to counsel seemed to be either directly or inferentially overruled by that court; and, as he did not think he had any point in the demurrer which would appeal to the court, argument would be a waste of time. The court then said that, upon counsel's statement that the points had been ruled upon by the Circuit Court of Appeals substantially in favor of the United States, the demurrer would be overruled. Counsel for appellant remarked that there were some new points that had not been ruled on, but he did not think they would appeal to the court, and did not care to argue them then. The court asked if they were kindred points to the ones already passed on, and counsel could not say definitely, but stated there was another question which he might argue later as to the unconstitutionality of the statute, although he had not quite satisfied himself on that yet and was working on it and did not care to argue it then. The court said that question could be raised at any time, and counsel said that was all regarding the demurrer at that time. The court then overruled the demurrer and the plea of not guilty was re-entered.

It does not appear that during the proceedings in the trial appellant made any contention that he had been either surprised or prejudiced by the evidence introduced under the alleged too-general allegations of the indictment, or that his rights relating thereto were being injured in any manner.

Title 28, U. S. C. § 391, 28 USCA § 391 (Judicial Code, § 269, as amended), contains the following clause: "On the hearing of any appeal, certiorari, writ of error, or motion for a new trial, in any case, civil or criminal, the court shall give judgment after an examination of the entire record before the court, without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties."

We are convinced that the counts complained of are not defective as contended by appellant; but, if it be conceded that appellant's contentions are correct, said alleged defects are to be considered as technical and as not affecting the substantial rights of appellant, and by reason of the statute last cited his contentions are without merit. Connors v. United States, supra; Lamar v. United States, supra.

Appellant contends that his demurrer to counts 13 and 18 and his motion in arrest of judgment as to said counts should each have been sustained separately and severally, because, as he says, neither of said counts alleges that appellant did not make any return whatever, but each alleges that he did not make a return "stating specifically the items of his gross income and the deductions and credits allowed." The language quoted is contained in each of said counts, and follows explicitly the language of the statute. The penal clause of the statute provides that any person who is required to make a return, and who willfully fails to make just such a return as is described in the above quotation, is guilty of a misdemeanor. There is no merit in this contention, for, even if his theory were correct, he is in error in the statement of the facts, for each of said counts alleges that he made no return whatever.

Appellant further insists that counts 13 and 18 are each insufficient because it is not alleged directly and positively in either count that no return was made, but only that no return was made to a proper officer. On the contrary, each of said counts directly and positively avers that no return whatever was made to the proper collector of internal revenue, or any other proper officer of the United States. The fact that the collector of internal revenue is the only proper officer authorized by the statute to receive and file the return fully warrants us in considering as surplusage the words "or to any other proper officer of the United States." There was no error in overruling appellant's demurrer and motion in arrest of judgment as to counts 13 and 18. Rosen v. United States, supra; Dunbar v. United States, supra; Evans v. United States, 153 U. S. 584, 14 S. Ct. 934, 38 L. Ed. 830; Collins v. United States (C. C. A.) 20 F.(2d) 574.

Each count of the indictment upon which appellant was convicted being sufficient to repel the demurrer, they are also sufficient to withstand the motion in arrest.

Judgment affirmed.